IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ERIC VON SCHAUMBURG, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:18-cv-03427 |
| | ) | |
| HEALTH CARE SERVICE | ) | District Judge John Z. Lee |
| CORPORATION d/b/a BLUE CROSS | ) | |
| BLUE SHIELD OF ILLINOIS, | ) | Magistrate Judge Sidney I. Schenkier |
| | ) | |
| Defendant. | ) | |

## **FIRST AMENDED COMPLAINT**

Plaintiff Eric von Schaumburg, by his attorneys, state the following as his complaint against Defendant Health Care Service Corporation d/b/a Blue Cross Blue Shield of Illinois ("HCSC").

## **INTRODUCTION**

1. Plaintiff Eric von Schaumburg suffers from advanced amyotrophic lateral sclerosis ("ALS"). He is confined to his home, is ventilator-dependent 24 hours per day, and is administered all of his nutrition and medication by a nurse through a feeding tube. Since 2016, Mr. von Schaumburg has required and has been receiving 24 hours, seven days a week, in-home skilled nursing care, which has been paid for by HCSC, administrator of his health insurance plan, as a covered service.

2. HCSC has repeatedly opposed paying for 24/7 skilled nursing care for Mr. von Schaumburg, claiming that Mr. von Schaumburg's care is "custodial" in nature (*i.e.*, primarily for personal comfort or convenience) and does not require skilled nursing.

3. Less than seven months ago, in November 2017, a decision by HCSC to deny skilled nursing care was overturned following an internal appeal, which determined that:

> [N]ot all of the requested services can be reasonably taught to someone who does not have specialized training or skill. Specifically, all the procedures pertaining to airway management, operations of a ventilator machine, and all the procedures pertaining to tracheostomy management, air leak detection, emergency placement of a tracheostomy, cannot reasonably be taught to someone who does not have specialized training or skill.

4. Despite that determination and notwithstanding the further progression of the ALS, on March 26, 2018, HCSC advised Mr. von Schaumburg that effective May 15, 2018, HCSC would terminate coverage for Mr. von Schaumburg's skilled nursing services.

5. This case is brought under the Employee Retirement Income Security Act of 1974 ("ERISA") to enforce Plaintiff's rights under the health plan and to enjoin HCSC from terminating coverage for 24/7 in-home skilled nursing care.

## THE PARTIES, JURISDICTION AND VENUE

6. Plaintiff Eric von Schaumburg, currently age 35, is an individual residing in the State of Illinois.

7. Defendant Health Care Service Corporation d/b/a Blue Cross Blue Shield of Illinois, headquartered in Chicago, Illinois, issues and administers health care plans, including the plan at issue in this action.

8. This Court has jurisdiction over this action pursuant to ERISA §§ 502(e)(1) and (f) (29 U.S.C. §§ 1132(e)(1) and (f)), which allows the district court to hear civil actions brought to recover benefits due under the terms of an employee welfare benefit plan, which, in this case involves a group health plan (attached hereto as "Exhibit A") sponsored by Midwest Orthopaedics at Rush ("Midwest Orthopaedics") and administered by Defendant HCSC for the benefit of the Midwest Orthopaedics employees and their dependents, including Plaintiff.

9. Jurisdiction in this Court is also proper pursuant to 28 U.S.C. § 1331, which provides subject matter jurisdiction over actions that arise under the laws of the United States.

10. Venue is proper in this District pursuant to ERISA § 502(e)(2) (29 U.S.C. § 1132(e)(2)) because the health care plan is administered in this District, he breach of the health care plan took place in this District, and Defendant HCSC resides in or may be found in this District.

## FACTUAL BACKGROUND

### Relevant Health Care Plan Provisions

11. Mr. von Schaumburg is the spouse of Lindsay Rudhman, an employee of Midwest Orthopaedics, which, at all relevant times, was the sponsor of an "employee welfare benefit plan" under ERISA § 1003, 29 U.S.C. § 1002(1), (the "Plan"). At all relevant times, HCSC has served as the insurer and administrator of the Plan. Mr. von Schaumburg is a "beneficiary" of the Plan, as defined by 29 U.S.C. § 1002(8), by virtue of his Ms. Rudhman's employment and status as a "participant" in the Plan under 29 U.S.C. § 1002(7).

12. Under the Plan, HCSC has established a "Utilization Review Program" to perform a review of certain covered health care services prior to such services being rendered. Those covered services include private duty nursing services.

13. Coverage of private duty nursing is dependent on a finding by HCSC that the service is "medically necessary."

14. The Plan defines "medically necessary" as follows:

MEDICALLY NECESSARY DETERMINATION

The decision that Inpatient care or other health care services or supplies are not Medically Necessary will be determined by the Claim Administrator. The Claim Administrator will provide notification of a decision to not authorize payment for Inpatient care or other health care services or supplies to you, your Physician, and/or the Hospital or other Provider. The notification will

specify the dates, services and/or supplies that are not considered Covered Services. For further details regarding Medically Necessary care and other exclusions from coverage, see the EXCLUSIONS – WHAT IS NOT COVERED section of this benefit booklet.

\*\*\*

EXCLUSIONS – WHAT IS NOT COVERED

Expenses for the following are not covered under your benefit program.

— Hospitalization, services and supplies which are not Medically Necessary.

No benefits will be provided for services which are not, in the reasonable judgment of the Claim Administrator, Medically Necessary. Medically Necessary means that a specific medical, health care or Hospital service is required, in the reasonable medical judgment of the Claim Administrator, for the treatment or management of a medical symptom or condition and that the service or care provided is the most efficient and economical service which can safely be provided

\*\*\*

Examples of hospitalization and other health care services and supplies that are not Medically Necessary include:

\*\*\*

— The use of skilled or private duty nurses to assist in daily living activities, routine supportive care or to provide services for the convenience of the patient and/or his family members.

15. The Plan provides the following additional relevant definitions:

CUSTODIAL CARE SERVICE … means any service primarily for personal comfort or convenience that provides general maintenance, preventive, and/or protective care without any clinical likelihood of improvement of your condition. Custodial Care Services also means those services which do not require the technical skills, professional training and clinical assessment ability of medical and/or nursing personnel training and clinical assessment ability of medical and/or nursing personnel in order to be safely and effectively performed. These services can be safely provided by trained or capable non-professional personnel, are to assist with routine medical needs (e.g. simple care and dressings, administration of routine medications, etc.) and are to assist with activities of daily living (e.g. bathing, eating, dressing, etc.). Custodial Care Service also means providing care on a continuous Inpatient or Outpatient basis without any clinical improvement by you.

> LONG TERM CARE SERVICES…means those social services, personal care services and/or Custodial Care Services needed by you when you have lost some capacity for self-care because of a chronic illness, injury or condition.
>
> MAINTENANCE CARE … means those services administered to you to maintain a level of function at which no demonstrable and/or measurable improvement of condition will occur.
>
> PRIVATE DUTY NURSING SERVICE …means Skilled Nursing Service provided on a one-to-one basis by an actively practicing registered nurse (R.N.) or licensed practical nurse (L.P.N.). Private duty nursing is shift nursing or 8 hours or greater per day and does not include nursing care of less than 8 hours per day. Private Duty Nursing Service does not include Custodial Care Service.
>
> SKILLED NURSING SERVICE … means those services provided by a registered nurse (R.N.) or licensed practical nurse (L.P.N.) which require the clinical skill and professional training of an R.N. or L.P.N. and which cannot reasonably be taught to a person who does not have specialized skill and professional training. Benefits for Skilled Nursing Service will not be provided due to the lack of willing or available non-professional personnel. Skilled Nursing Service does not include Custodial Care Service.
>
> RESPITE CARE SERVICE…means those services provided at home or in a facility to temporarily relieve the family or other caregivers (non-professional personnel) that usually provide or are able to provide such services for you.

16. The Plan also provides, under "Other Covered Services," that "Private Duty Nursing Service" is a covered benefit, and further states:

> Private Duty Nursing Service-Benefits for Private Duty Nursing Service will be provided to you in your home only when the services are of such a nature that they cannot be provided by non-professional personnel and can only be provided by a licensed health care provider. No benefits will be provided when a nurse ordinarily resides in your home or is a member of your immediate family. Private Duty Nursing includes teaching and monitoring of complex care skills such as tracheotomy suctioning, medical equipment use and monitoring to home caregivers and is not intended to provide for long term supportive care. Benefits for Private Duty Nursing Service will not be provided due to the lack of willing or available non-professional personnel.

17. The Plan contains no yearly maximum on Private Duty Nursing Services so long as medical necessity is met.

18. Care which is considered "Custodial" or "Long Term" or Maintenance" or "Respite" is not a covered benefit under the Plan.

### Eric von Schaumburg's Health and Medical Needs

19. Mr. von Schaumburg has advanced ALS, a progressive neuromuscular disorder which is ultimately fatal. Currently, due to the advanced stage of his illness, he is confined to his home and requires a mechanical ventilator (24 hours per day) and feeding tube. He is not ambulatory. He communicates with an eye gaze due to the paralysis of all of his ambulatory and speaking functions due to the illness.

20. Mr. von Schaumburg lives at home with his elderly parents. He and his spouse are estranged and no longer reside together.

21. Mr. von Schaumburg is completely dependent on others for all of his care.

22. Since approximately March 2016, HCSC has approved reimbursement for continuous 24/7 in-home skilled nursing services under the terms of the Plan; and has reimbursed the cost of such services.

23. Mr. von Schaumburg's respiratory status is compromised and requires constant monitoring and assessment to maintain his vital signs within normal limits, and to be on-site and available to perform life-saving interventions at a moment's notice. On a daily basis, his skilled nurses provide: tracheal suctioning, cough assist respiratory treatments, medicated nebulizer treatments, repositioning, and manual breath to prevent occluded airway and oxygen desaturation. If Eric von Schaumburg experiences occlusion of an airway due to increased secretions or a mucous plug, then he requires immediate intervention without which he may suffocate.

24. The skilled nurses also administer all of Mr. von Schaumburg's nutrition, hydration, and medications through a percutaneous endoscopic gastrostomy ("PEG") tube, and maintain aspiration precautions to prevent aspiration pneumonia.

25. The skilled nurses also monitor Mr. von Schaumburg's skin very closely, and perform repositioning multiple times a day to prevent the development of bed sores.

26. Without constant and continuous skilled nursing supervision, Eric von Schaumburg is at extremely high risk for respiratory complications, preventable infections, and death due to suffocation and/or cardiac arrest.

27. Mr. von Schaumburg's treating physicians have certified to HCSC on repeated occasions that it is medically necessary for Mr. von Schaumburg to receive 24/7 skilled nursing care.

## September 2016 Denial of 24/7 Skilled Care

28. During the approximate three plus years that Mr. von Schaumburg has been receiving 24/7 skilled nursing care, his physical and medical condition has continued to decline due to progression of ALS.

29. The only alternative to Mr. von Schaumburg's in-home skilled nursing care would be immediate admission to an intensive care unit at an acute care hospital due to his ventilator dependency.

30. Defendant HCSC has repeatedly threatened to terminate 24/7 skilled nursing care for Mr. von Schaumburg, claiming that the care being provided to Mr. Von Schaumburg is "Custodial," "Respite," "Long Term," and "Maintenance," which are not covered benefits under the Plan.

31.     In September 2016, HCSC advised Mr. von Schaumburg that it would be terminating coverage for 24/7 skilled nursing care because "the care needed meets the criteria for custodial, respite, long term and maintenance care which are benefit exclusions. These services do not require the technical skills, professional training and clinical assessment ability of nursing personnel…"

32.     However, following a peer-to-peer conversation between its in-house doctor and Mr. von Schaumburg's pulmonologist, Lisa Wolfe, M.D., HCSC reversed its decision to terminate Mr. von Schaumburg's 24/7 skilled nursing, documenting the following rationale in its internal claims notes:

> Denial was overturned on peer to peer as members condition has progressed from initial approval. Members muscle weakness has progressed further from last update from able to walk 30 feet at the time of initial PDN approval to where he cant even move his hands and only can shrug his shoulders now. He is bed bound, non- verbal, non-ambulatory and uses eye gaze communicative device to communicate, but now getting increasingly difficult as requiring using eye crutches to be able to use eye gaze communicative device. Given the fragile and progressive nature of his condition and further progression of his condition from last update, I will approve 168 hours of PDN service a week, 24 hours a day.

33.     On April 26, 2017, BCBS's medical director, J. McClaran, M.D., reauthorized six months of PDN services but wrote that all further extensions should be "presented to the PDN committee for possible wean of hours," stating:

> Member has deteriorating condition with ALS. Member was originally approved PDN (which has no yearly maximum as long as medical necessity is met) to transition member home on chronic maintenance mechanical ventilation. Member has seen 2 x 6 months extensions as member's condition has deteriorated leaving him bed confined with very measured ability to communicate with his eyes. However, the member may be reaching a very nearly vegetative state where additional training of the caregivers would no longer be necessary as member reaches 100% custodial care.
>
> Given this member's eventual plataeu [sic] to near custodial case, I'm recommending that all further approvals be presented to the PDN committee for possible wean of hours.// JMcClaran, MD

8

**September 2017 Denial of 24/7 Skilled Care**

34. On September 7, 2017, HCSC once again terminated Mr. von Schaumburg's skilled nursing services, asserting that he had been "clinically stable for the last five months and your caregivers are trained to provide your care when nurses are not available. The care you need is considered Custodial, Respite, Long Term and Maintenance Care Services and these are benefit exclusions."

35. Mr. von Schaumburg's family appealed that determination on September 28, 2017.

36. Upon receiving Mr. von Schaumburg's submission, HCSC forwarded Mr. von Schaumburg's medical records to an outside doctor, neurologist Leonid Topper, M.D., for review.

37. Dr. Topper averred in a report dated October 31, 2017 that the services being provided were "services which required the skill of a registered nurse or licensed practical nurse" and that "not all the requested services provided can reasonably be taught to someone who does not have specialized training or skill." Specifically, he explained, "all the procedures pertaining to airway management, operations of a ventilator machine, and all the procedures pertaining to tracheostomy management, air leak detection, emergency placement of a tracheostomy, cannot reasonably be taught to someone who does not have specialized training or skill."

38. In an addendum dated November 4, 2017, however, Dr. Topper declined to comment on whether the requesting skilled nursing services were covered benefits under the Plan, observing:

> This definition [of Private Duty Nursing Services] does not address the member-specific situation where, on the one hand, the member needs services of such a nature that they cannot be provided by nonprofessional personnel and can only be provided by a licensed health care provider, but, on the other hand, the services requested are long-term services, but the private duty nursing is not intended to provide for long-term supportive care, as per plan. In other words, the service is needed medically and needs to be performed by a

9

nurse, but the plan is not covering long-term services. Therefore, I defer the answer to this question to legal/contract specialists.

39. Upon receiving Dr. Topper's report, HCSC notified Mr. von Schaumburg by letter dated November 4, 2017 that it had reauthorized 24/7 skilled nursing services for four months, from November 15, 2017 to March 15, 2018.

### March 2018 Denial of 24/7 Skilled Care

40. Between November and March 2018, Mr. von Schaumburg submitted to HCSC the necessary documentation for reauthorization of 24/7 skilled nursing care establishing the ongoing medical necessity for such treatment.

41. On March 26, 2018, HCSC notified Mr. von Schaumburg by letter that it was once again terminating his skilled nursing care effective May 15, 2018.

42. In its March 26, 2018 letter, HCSC asserted that "[t]here is no expected improvement in your current state of health and the purpose of the care is to maintain your current level of functioning (maintenance)," the requested benefit "appears to be for the relief of the caregivers," and skilled nursing services are available only on an "intermittent basis for clinical assessment if determined to be medically necessary."

43. Mr. von Schaumburg appealed the March 26, 2018 decision to HCSC pursuant to 29 U.S.C. § 1133 and 29 C.F.R. § 2560.503-1; however, on May 10, 2018, Plaintiff learned that HCSC had upheld its decision to terminate benefits as of May 15, 2018.  In its decision letter dated May 14, 2018, HCSC acknowledged that the health care services Mr. von Schaumburg requires are "skilled" but stated that, since Mr. von Schaumburg's condition was "not expected to improve," the services were therefore "custodial" in nature and excluded from coverage under the Plan.

10

44. Contrary to the reasons provided by HCSC, as with the prior determination, the health care that Mr. von Schaumburg has required and will necessarily require as his condition progresses is not "custodial" in nature and cannot, as previously determined by Dr. Topper, be provided by anyone other than a skilled nurse. Due to HCSC's refusal to provide 24/7 skilled nursing coverage, and the threat of imminent harm once the 24/7 skilled nursing care is reduced, Mr. von Schaumburg has no alternative but to seek to enforce his rights under the terms of the Plan, clarify his rights to future benefits, and to enjoin HCSC from reducing skilled nursing services below 24 hours per day, 7 days a week.

45. All required pre-litigation appeals seeking the coverage of health benefits for Plaintiff have now been exhausted pursuant to 29 U.S.C. § 1133. Therefore, this matter is ripe for judicial review.

## COUNT I-
## CLAIM FOR BENEFITS, ENFORCEMENT OF RIGHTS
## AND CLARIFICATIONS OF FUTURE BENEFITS RIGHTS
## UNDER ERISA § 502(a)(1)(B)

46. Plaintiff reasserts and realleges the allegations of paragraphs 1 through 45 as if fully set forth herein.

47. Pursuant to ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), Mr. von Schaumburg is entitled to: (1) enforce his rights under the terms of the Plan, (2) clarify his rights to future benefits under the terms of the Plan, and (3) recover benefits due under the Plan that were wrongfully withheld.

48. As administrator of the Plan, HCSC makes all claims determinations and decides all benefit questions under the Plan.

49. HCSC has an obligation pursuant to the terms of the Plan to pay the benefits described in the Plan.

50. HCSC has refused to approve coverage for skilled nursing care for 24 hours a day, 7 days a week for Mr. von Schaumburg on the basis that he "has not shown improvement in his condition and is not expected to show improvement" so his care at this point is considered "custodial," and therefore, the requested service is not supported as medically necessary.

51. HCSC's decision to refuse to approve coverage for 24/7 skilled nursing care for Mr. von Schaumburg on this basis is improper since no such criteria exists in the plan and the discontinuance of coverage places the Plaintiff at risk of sudden death if he cannot be timely transported to a hospital.

52. Mr. von Schaumburg's treating physicians have concluded and reported to HCSC on multiple occasions that it is medically necessary for Mr. von Schaumburg to receive 24/7 skilled nursing care.

53. Mr. von Schaumburg seeks an order directing HCSC to immediately authorize coverage for 24/7 skilled nursing care for Mr. von Schaumburg that shall continue until such time as Mr. von Schaumburg's skilled nursing care is no longer medically necessary for his care and treatment (i.e., he ceases to be ventilator dependent).

54. Per Dr. McClaran's April 26, 2017 claim note, all further approvals of Mr. von Schaumburg's skilled nursing services must "be presented to the PDN committee for possible wean of hours."

55. HCSC has engaged in a pattern or practice of repeatedly denying Mr. von Schaumburg's claims for ongoing PDN services, despite any change or improvement in his condition, thus forcing Mr. von Schaumburg to appeal the denial of his benefits, resulting in needless stress and disruption to himself and his family due to the threat of further nursing care disruptions.

56. Therefore, in addition to approval of his claim for ongoing benefits, Mr. von Schaumburg seeks a declaratory judgment as to the meaning of the Plan terms as they relate to his particular situation (i.e., ventilator dependent with no expectation of improvement).

WHEREFORE, Plaintiff Eric von Schaumburg seeks entry of an order directing Defendant Health Care Services Corporation to maintain 24/7 skilling nursing care (168 hours per week) for Plaintiff until such time as 24/7 skilled nursing care is no longer necessary; (2) issuance of a declaratory judgment pursuant to 29 U.S.C. § 1132(a)(1)(B), which allows a participant or beneficiary to sue to "clarify his rights to future benefits under the terms of the plan," to determine and then declare that the skilled nursing care shall continue to be provided so long as Plaintiff's condition does not materially improve (i.e., he ceases to be ventilator-dependent); and (3) for an award of attorneys' fees and costs pursuant to 29 U.S.C. § 1132(g), and (4) for such further relief as this Court deems just and proper.

Dated: June 6, 2018                                                    ERIC VON SCHAUMBURG

By: */s/ Martina B. Sherman*
Mark D. DeBofsky
Martina B. Sherman
DeBofsky, Sherman & Casciari, P.C.
200 W. Madison St, Suite 2670
Chicago, IL 60606
(312) 235-4880 (phone)
(312) 929-0309 (fax)
mdebofsky@debofsky.com
msherman@debofsky.com

and

By: */s/ Maureen Browne Schoaf*
Richard R. Winter
Maureen Browne Schoaf
Holland & Knight, LLP
131 S. Dearborn St., 30th Fl.

                                                            Chicago, IL 60603
                                                            (312) 263-3600
                                                            (312) 578-6666 (fax)
                                                            richard.winter@hklaw.com
                                                            maureen.schoaf@hklaw.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 6, 2018, I electronically filed the foregoing with the Clerk of the U.S. District Court, Northern District of Illinois, Eastern Division, using the CM/ECF system reflecting service on all attorneys of record.

/s/ Martina B. Sherman
Martina B. Sherman